Next case for today is number 2019-51074. Dana White versus U.S. Corrections, L.L.C., U.S. and Southeast Employee Leasing Incorporated. Mr. Hess, Mr. Hess, is that you? Yes, Your Honor. Is that correctly pronounced? Is it Mr. Hess? It's Hesse, Your Honor. Hesse, Mr. Hesse. I apologize. You may proceed. Thank you, and may it please the Court, Curt Hesse for the appellant, Dana White. On behalf of my client, I urge the Court to reverse the trial court's dismissal of her law suit and to render judgment that she is not exempt from the overtime requirements of the Fair Labor Standards Act. There are essentially two reasons, one substantive and one procedural. First, the district court ignored the plain language of the Motor Carrier Exemption and compelled the inevitable conclusion that she was not exempt from the overtime requirements of the FLSA. Second, the process by which the district court resolved the issue, starting with how it was raised to its consideration to how it was ultimately resolved, fell well short of what the rules and the law require, and it deprived my client of important procedural safeguards. The central and, in our view, dispositive issue in this case is about power, specifically who has the power to regulate the qualifications and maximum hours of service for employees like Ms. White in the private prisoner transportation industry. The reason is that the Motor Carrier Exemption excuses those, excuses employers from paying overtime to workers for whom the Secretary of Transportation has the power to regulate the qualifications and maximum hours of service, Motor Carrier Exemption. In this case, we know that evidence that you would present to overcome summary judgment with respect to the MCA exemption. Your Honor, there was no summary judgment motion filed. Right, I understand, and you're going to argue that that's unfair, but my question is, if you were, we were going to send it back just hypothetically to allow you to present something, is there anything for you to present, or is there not any evidence anyway that the officer was not doing a security-type function? Your Honor, I mean, there was a motion to stay filed pretty early on, pending resolution of the 12B motion, and the way we think we win is that this is a pure question of law, at least insofar as the way the statutes work, and they work together. So, we didn't engage in a bunch of discovery. Had I known, for example, that the District Court was considering entering summary judgment against me, I would have filed a Rule 56D motion and requested discovery targeted to the issues in the motion, but as we'll talk about in a minute. Counsel, didn't you know that when they filed a motion, a Rule 12B6 motion with attachments to it? I did, Your Honor, and I objected to those attachments. The magistrate judge who, in the report and recommendation, agreed with me and said that that was inappropriate to do on the 12B6 stage, and she recommended denying the 12B6 motion on that and other grounds. So, I technically won that issue at the District Court. She later, though, characterized that and then went on to say that my clients were exempt as a matter of law because essentially the Department of Transportation or the Attorney General has adopted by reference the DOT's regulations, and so that means that the Secretary can regulate workers like my client. I'm sorry. I was just going to ask Judge Elrod, to your point, did you ever file any sort of request for discovery or identify anything in response to that 12B6 motion attaching those evidentiary matters, identifying the other discovery that you might have used to create a fact issue? No, Your Honor, because we objected to the consideration of the extrinsic materials under Rule 12D because it was a 12B6 motion, and in every situation I've ever had where a judge wants to consider the extrinsic materials, I get a notice from the district judge that says, hey, we intend on considering these, and so we're going to treat this as a motion for summary judgment. That's exactly what the advisory committee notes say should happen in this specific instance, and it didn't happen. So, the answer to my question, then, that if you have the chance, you might have some evidence, if you knew that you needed evidence? And this happened in other cases I've handled where a defendant attaches extrinsic materials to a 12B motion. I get a notice from the district judge that says... I think you might be misunderstanding Judge Elrod's question. I think it's a friendly question. She's assuming your procedural point, but I understand that you should have had notice. She's asking, what is the evidence that you would come up with on... It's futile to send it back for you. Is this a no harm, no foul because you don't have any evidence anyway? Or, if we sent it back and gave you a chance to get notice and have this all play out appropriately, is there anything to it? Well, Your Honor, in these Motor Carrier Act cases, like this court has said in Olivas v. Barclay, they depend a lot on the documentary evidence. For example, cargo and passenger manifest records relating to the number of requests in the event this case got sent back. But to my point, to the larger point that we raise in our own dispositive motion, I think when you read Jenna's act and you compare it to the Motor Carrier Exemption, there is no way to conclude that the Secretary of Transportation has the authority to regulate people like my client, and that means she's not exempt. The language, the statutory language in the Motor Carrier Exemption says, those workers, only those workers for whom the Secretary of Transportation can regulate the qualifications and maximum hours of service, only those workers are exempt. Here, you have subsequent legislative action in 2000. And remember, the Motor Carrier Act was one of the original two exemptions. The Motor Carrier Exemption was one of the original two exemptions in the FLSA. In fact, the Motor Carrier Act predates the FLSA by three years. I think it was passed in 1935. But you have legislative action in the year 2000, where Congress says this particular industry shall be regulated by the Attorney General and the Department of Justice. It couldn't be more clear. The section that requires the Attorney General to promulgate regulations regulating this industry is titled Federal Regulation of the Private Prisoner Transportation Industry. I think when you read that language, you can't help but conclude that Congress made a very clear and a sensible choice in saying that the Attorney General and the Department of Justice should regulate these workers. Mr. Hesse, isn't there a regulation, I think it might be 28 CFR 9713, that provides private prisoner transport entities are still subject to Department of Transportation regulations governing maximum driving time. You know, I'm paraphrasing. Does that regulation have any bearing on this question that we're talking about, a legal question? Sure, partly, Judge. I think the regulation says, and I actually flagged it myself, that they are required to adhere to those regulations regardless of whether or not they actually would apply in the absence of Genizac. So it's essentially the Attorney General saying, I have concluded that these regulations sufficiently protect the public, like I was supposed to do under Genizac, so just comply with them. We have a similar state law here in Texas. Purely intrastate motor carriers that would not be subject to regulation by the DOT are required under state law to register with the DOT and to comply with their regulations. But that doesn't mean that they're regulated by virtue of the Motor Carrier Act. They're regulated by virtue of state law. The other issue is with the regulations, Judge. They say in no uncertain terms that none of the regulations can be used as a defense in any civil action. And the way I understand the argument that's been raised by my colleagues is that by regulation, the Attorney General has directed workers in the private prisoner transportation industry to comply with regulations by the Secretary of Transportation. And that, according to them, means they're exempt. But if you read the other rest of the regulations, they say you cannot rely on any regulation that I promulgated, but this is the Attorney General's regulation, as a defense in any civil action. So I don't see how that they can come to court and argue in this case that this exemption by reference theory is going to carry the day. The other issue is, Your Honor, the regulatory material plainly says when Congress, when the Department of Justice was issuing these regulations, it says we are issuing these regulations to address issues that have arisen in a previously unregulated industry. And they say it on multiple occasions. And so to your point, I don't think, and I think the Department of Justice acknowledges in the rulemaking process, that these entities were not regulated prior to the enactment of Jenna's Act. And, you know, at the end of the day, the merits argument, like we said at the beginning, comes down to power. And it matters. It matters for the purposes of the exemption who regulates workers in the private prisoner transportation, and it's clearly the Attorney General, and not the Secretary of Transportation. There are also... Is it Gina's Act? Is that how you pronounce it? Gina's Act is a floor. But that in addition, there's still the requirements. If the DOT had some requirements, then they are not inapplicable. It doesn't make them not apply. It just says that these certain rules will be there to protect and the AG will have authority over them. But if the other rules already applied, it adds a layer. So it's not a conflict. It's just additional protections. Why isn't that a decent reading of the CFR and the way the CFRs work together? I don't think I entirely disagree, Your Honor. In fact, the statutory text, which obviously controls in where we should start, says the Attorney General shall promulgate regulations related to qualifications and maximum hours of service for workers like Ms. White. But they limit his power to do so by referring to the regulations promulgated by the Secretary of Transportation. Now, he could absolutely depart from those, but the statute says they are the For example, if the Secretary of Transportation says a worker in the private prisoner transportation industry can only be on duty for 12 hours, that's it. The AG can't make that worker, can't allow that worker to be on duty for more than 12 hours, but he could certainly say, he could certainly say that worker can't be on duty for more than eight hours. Has any court ever followed your interpretation of this? Your Honor, I have searched high and low, and there is no case law on this subject. So I think this court's the first one taking a crack at it. Well, the court that heard it earlier took a crack at it, but I know that's your point. It's a real unique issue. It's not been really vetted before. In terms of the procedural, starting with how this issue was raised, you cannot raise an affirmative defense on a Rule 12b motion, except in extremely limited circumstances not present here. The standard under Rule 12b is pretty clear. Everyone has to assume that the facts that I pled in the complaint are true for purposes of the motion, and we plainly pled that my client was not exempt. There's also no facts in there related at all to the motor carrier exemption. There's no allegation that she was employed by a motor carrier. That would be And in response, what U.S. Corrections has said in their briefing is that because we didn't plead, we tacitly admitted by implication that my clients are exempt. Think about that for a minute. If that's the standard, I'd have to predict with unerring accuracy every defense that's going to be asserted against my client and plead facts conclusively negating them. But that's never been the law, and I don't think it ever will be. You simply don't have to plead an affirmative. You simply can't raise an affirmative defense on a Rule 12b motion because complaints plaintiffs aren't required to anticipate them and plead facts to negate them. When we got to the consideration of the issue by the magistrate judge, she appeared to think, and U.S. Corrections argued again, that I had the burden to conclusively negate the defense. But even if you consider the Rule 12b motion is one for summary judgment, the standard has always been, or at least for a very long time, that the party moving for summary on an affirmative defense has to come forward with evidence conclusively establishing that defense and enough evidence to establish it that would entitle the movement to a directed verdicate trial. And I see my time is up. Thank you, Mr. Hesse. We have your argument. Mr. Medesigan, can you help me? Yes, Abt and Medesagan for the defendant Applee U.S. Corrections LLC. Medesagan. Medesagan. Yes, Judge Elrod. Thank you very much. We've reserved 17 minutes for the merits argument and have reserved three minutes for co-defendant Applee Southeast Personnel Leasing, who will be discussing joint employer liability as well as why the defenses should in order to the benefit of all defendants. May it please the court and counsel. USC asks this court to affirm the lower court because it deserves to be affirmed on the substantive question of whether the Motor Carrier Act applies to the facts of this particular case. Well, on the first since you opened with the low that the district court deserves to be affirmed. Are you saying that we should affirm a statement that this was a 12 B or real? Are you what? What are what are what is what did the court decide? And when you say we're supposed to affirm it, what does that mean to you? Yes, Your Honor, the court, the district court, the district court granted clearly the motion to dismiss under 12 B6. I mean, it denied the partial motion for summary judgment, but it couldn't grant a 12 B6 and rely upon an affirmative defense and documents outside the record. So that's not that can't be what happened, can it? So I know you said you think you that the first is that I think you can avoid the issue in its entirety. I know this is not directly your question. I'll answer that in a moment. The question of whether the court was correct in dismissing this case under Rule 12 B6 is not preserved for appeal. It's not in front. It's not before you at this point that you open by saying that the district court was correct in its decision on the substantive question on the merits question of whether the Motor Carrier Act exemption does, in fact, apply here procedurally. Counsel, I don't believe so, Your Honor, and I believe there are. Number one, it's not impermissible in every instance. It's not categorically impermissible to raise affirmative defenses in a 12 B6 motion. It happens frequently with respect to statutes of limitations to consider outside documents, but then say you're doing 12 B instead of converting. Isn't that an error? And I don't know how you say it's not so well. I'd like I'd love to help. So Rule 12 B6 motions are allowed to consider matters number one within the pleadings. In addition to that matters that are susceptible to judicial notice, things like a citation, and it's a believe it's important to look at the two exhibits that are attached to the motion to dismiss. One is a courtesy copy of the Federal Register, a citation I could have provided without providing the exhibit in its entirety. It was just a and a printout from the government website that I know has not been challenged. And I think to your to your ultimate question, if there was a procedural error here, believe it was harmless error. And this really gets to your questions about if you did send this back down, would anything change? Do you believe there was error, though, first of all, and that it's just harmless? I don't believe because we can't just consider a document off of a website. As part of the 12 B, we might be able to consider the Federal Register, but not just a screenshot of a website is not a 12 B. I mean, judicial noticeable thing. And so your honor, I believe, again, it is susceptible to a website can be susceptible to judicial notice. But we actually make two arguments in our motion to dismiss. And so one is that Miss White did not plead. She did not allege a sufficient quantum of facts to substantiate her claim that she was, in fact, covered a covered employee by the FLSA. To get to that distinction, I think it's important to look at the Technical Corrections Act to the that involves the Motor Carrier Act exemption. A very easy way to look at it is 207 of the FLSA deals with overtime. That's a cause of action section to 13 B deals with the exemptions to the overtime requirement to 13 B. One particularly deals with the MCA. The Technical Corrections Act amended not to 13 B amended 207 to define who is a covered employee. And it explains that covered employees for the purposes of questions about who in the motor carrier context include those individuals who number one, do not operate vehicles that way more than 10,001 pounds and number two, individuals who operate vehicles that fall below that weight requirement, but also fall below the passenger capacity requirement. And so to counsel, she alleged that she was covered by the FLSA. Correct. She was a non exempt employee. He is alleged. Yes, your honor. You're in your obligation. Looking at her. Her complaint is to. So here's my question. Did she? Did she also allege facts sufficient in the pleading to demonstrate that she was covered by the MCA exemption? You're on another alleging that she was a cover. You know she was not exempted. She was misclassified. Those are legal conclusions. That was for the court to decide so stripped. She alleged enough in the complaint standing judging just by the allegations of the complaint. Are those allegations sufficient to show that the MCA exemption could apply here as a matter of law? Yes, your honor. I believe they are sufficient to explain that they allege the facts. If looking at the complaint allege paragraph 16 of the complaint alleges. And more or less, he alleges that she was a driver number one who engaged in interstate commerce number two who crossed state lines number three and otherwise who operated vehicles that were below 10,001 pounds. Those four facts alone do not allege a violation of the FLSA. Particularly looking at Encino requiring a fair reading. A fair reading of the Fair Labor Standards Act. Not just the remedial nature of it, but all of it together including 213b. Those four facts and really those are the only four facts beyond the jurisdictional questions or the jurisdictional facts about where she lives or the status of this action. Those are the only four facts that are truly alleged here. And so no, I believe there are two items. I think you can look at this case as a 207 case that you plead a sufficient quantum of facts to establish a plausible claim. Simply driving vehicles that weigh under 10,001 pounds under 207 under 207 and the Technical Corrections Act does not explain that someone is a covered employee. And so that's number one to Judge Elrod's point. There is authority in this circuit and across the country that federal websites that are not susceptible to dispute and there were no factual disputes below about this can be considered. But even if you don't consider the second exhibit, if you look at only exhibit one which is a courtesy copy of the federal register, they're redundant in some ways. Exhibit two is a printout from the FMCSA company safety snapshot that just shows that DOT does in fact exert regulatory authority over over USC. You can reach the same conclusion. That's a factual conclusion. That is as a matter of fact, DOT does do that, and that's a question that is factual. And again, yes, Your Honor, we can see that that that other side needs a chance to say no, DOT doesn't do that. And so I'd like to address in that can. I'd like to address a few items that that my friend Mr Hesse mentioned or alluded to in his oral argument about the facts questions and his opportunity to seek discovery. Um, the plaintiff did serve discovery here. That's not in the record, but it absolutely served discovery request. That is actually the impetus for the motion to stay. We agreed among the parties answered before the court ruled on its 12 B, but could relied upon factual points. No, Your Honor, because the parties agreed to a joint motion to stay because the court indicated that it wasn't going to rule on summary. They specifically asked for summary judgment. If it was going to be summary judgment, they needed time to do their evidence. And the court said, I'm not ruling on summary judgment, but then still consider the evidence. I have a question, though, about the Western District of Texas Authority that says that. That these are fact based assertions that go to the merits of the plaintiff's claims and require factual determinations not appropriate on motion to dismiss. This is the Aston case, the McLeelan case and the Morgan v. Rigged Power case. How do you distinguish those cases, counsel? So I think the Aston case being the most directly on point addressing coming close, the closest case to address Gina's act and its interplay here is we distinguish it on three quantum of allegations in that case were more substantial. It alleged that the plaintiffs in that case were not only operating vehicles that weighed less than 10,001 pounds, but also that they were doing that primarily left open that they were driving other vehicles. It also alleged that they were transporting inmates through airlines, which wouldn't come within the ambit of the MCA exemption. And so in the Aston case, the court said it's better to address that on summary judgment. What do you do with McLeelan that says defendants FMCA argument is an affirmative defense that requires discovery and more factual development before being decided on the merits? And so in this case, on these facts here, the plaintiff has admitted that factual questions, my friend, Mr. Hesse, had said it again, that this is a question that the question presented to the court is a pure question of law. But again, Judge Elrod, what I would say is that the question of whether a motion to dismiss Schroeder should not have been granted is not what is before you at this point. In fact, the first two questions, the first two issues on appeal are number one is whether the court below erred in granting, or I'm sorry, erred in denying the partial motion for summary judgment, and two, whether the court erred in denying, or I'm sorry, in granting a sua sponte motion for summary judgment without affording the plaintiff notice. That's not at issue here, and we've addressed this in our brief, but I would note that the only mention, the only mention to the 12b6 standard and the arguments that surround that, including whether the court could look at evidence from the government website or confirmed in the federal register, is addressed in footnote, I believe it's footnote six, on page seven of the brief, on the principal brief, that's footnote six of page seven of her principal brief, and then again for the first time on reply. You asked some questions to my colleagues in the case that preceded this one, but why they were not addressed in the principal brief, if that's the thrust of the they've advanced, and the answer to that, you know, is again, arguments that are raised for the first time on reply or that are subordinated in footnotes are improperly before the court. They're effectively waived. Okay, I'm not asking you about what they've argued right now. I'm asking you about what the Western District of Texas has held, that it's an affirmative defense that and in that three times, and in that, tell me why that's wrong. I'm not asking on those facts of the case. I'm asking for the blanket statement that an affirmative defense in this context of the FMCA is not appropriate because of the prong to issue offers for 12b. And so my response to that, in, first of all, in this court's authority in Lovelace, the court can, again, can, in fact, consider, consider affirmative defenses. The standard for an individual to be entitled to relief under 12b-6 is heightened. It has to be effectively, it's very similar, frankly, to what USC's burden was responding to the partial motion for summary judgment. That we have to, we're talking across purposes, because I'm asking you, why is a discovery required before we rule on this? And in another case, that might be a better ruling. In this case, the plaintiff's ruling that's been in three cases in a row. And in this case, on these unique facts, the plaintiff did not request it. They agreed to a stay of discovery, and they agreed that they did request it, though. They said, if you're going to use summary judgment and rule on facts, we want a chance. They specifically requested it. Yeah, I understand your point, Your Honor. That's the answer. So I think the answer, I think we can look at this in a backwards focus, in the same way that you address these questions to my colleague. What happens even if the court erred on granting a 12B6? Does anything change? Do you want to say that any discovery would be futile? Absolutely futile. And again, these are not arguments that were raised below. It was really a question of... We're just asking, why would it be futile? It'd be futile because the evidence in the record, it's record, it's set 178 through 218, shows that plaintiff Dana White operated vehicles that were capable of carrying greater than eight passengers, that she crossed state lines, and that she can... These are driver logs that are required under the FMCSA's authority. Isn't she entitled to rebut that or show that the facts are actually otherwise, so that she's not subject to the exemption? That is not something that the plaintiff really argued below. Her argument effectively was that the court got the law wrong, that the question was... I think the first two sentences of her partial motion for summary judgment really tie this up nicely. Does the Motor Carrier Act exemption of the FLSA apply to drivers like Ms. White, who transport dangerous individuals who are within the ambit of Gina's act? And she says, if it does, she's not entitled to overtime. And so the question before the court is, does Gina's act, if it chooses to get there... Again, Judge Hightower also... Magistrate Judge Hightower also explained that these arguments are largely academic. And again, I think they're largely academic because the court has the evidence. And I understand Judge Elrod's point about whether this should have been granted under 12B6 or under Rule 56. I would, in effect, invert... I'd answer the question to tie a knot on it. I'd invert the answer, or invert the question by answering it in this way. In effect, if a motion for partial summary judgment on this pure question of law, one individual question of law, is denied, we ultimately get to the same conclusion. Your authority in McKee, McKee case, establishes that the defendant's burden on an affirmative defense is to show... to provide credible evidence... corrected verdict at trial. And then otherwise, in Fontenot, the plaintiff's burden was to show... that the defense does not apply beyond... per adventure, beyond any hypothetical. In Leatherman, though, I think Leatherman... You can decide this case on Leatherman grounds if you do believe that considering a government website or a citation to the Federal Register is inappropriate. You can decide that particular point on Leatherman grounds, where the court said, whether it was supposed to be under 12B6 or under Rule 56, it's harmless error if there are truly no facts at issue below. And here, and I see my time is running... is coming to a close. Here, there were no factual questions below. These are not arguments that the plaintiff raised on summary judgment or otherwise. Thank you. We have your argument. Thank you. And I'm... Could you pronounce your name for us? Gumminy. Ms. Gumminy. Ms. Gumminy. You may proceed with your argument. Thank you. Thank you. May it please the court. I represent Southeast Personnel Leasing, which I will refer to in short form as SEPL. SEPL is a professional employer organization that provides certain administrative services, including payroll and benefits administration to its clients. SEPL provided these services to U.S. Corrections. Plaintiff has alleged that SEPL and USC were joint employers in this case. By way of background, because there's not a lot in the record about SEPL, we sort of got carried along with the court's... district court's ruling. I just want to talk a little bit about that organization. As a professional employer organization, SEPL is somewhat differently situated than your typical staffing company because it does not have any responsibilities for hiring, interviewing, staffing, managing, reviewing, evaluating, or terminating its clients' employees. More often than not, SEPL does not have any direct communications with its clients' employees. Here, we believe that U.S. Corrections has addressed the jurisdictional issue thoroughly in both its brief and in oral argument. We join U.S. Corrections' argument that plaintiff has not preserved her for review the appeal of the denial of her motion for partial summary judgment because she did not also challenge the district court's order granting the motion to dismiss under Rule 12b-6. However, to the extent the court finds that there is jurisdiction to address either the applicability of the Motor Carrier Act exemption and the denial of plaintiff's motion for partial summary judgment, U.S. Corrections has also thoroughly briefed and argued that issue, and SEPL joins U.S. Corrections' arguments that this exemption bars the overtime wages claims of plaintiff and other putative collective action members. Just quickly addressing Judge Duncan's question from earlier question to Abtin. I believe Abtin mentioned that your question was, did plaintiff allege sufficient facts to show that the MCA exemption is applicable? I would also refer the court to paragraph 13. I believe Abtin mentioned paragraph 16. I think those two paragraphs are sufficient. Paragraphs to demonstrate or show facts, sufficient to show that the MCA exemption is applicable, and that's what I would refer the court to, to look at those two paragraphs. What do they say, Ms. Gumany? Just so we know what the substance is. Sure. Paragraph, let me get to that real quick. Paragraph 13 states that, here we go. I didn't mean for you to have to read it. No, that's okay. I have a limited amount of time, and I apologize. I had just, here we go. Okay, paragraph. Look at that, then we'll see an allegation that sort of establishes a matter of law that the exemption applies. Is that right? That's correct. Paragraph 13 states that defendant contracts with local, defendants, pardon me, contract with local and state governments to perform inmate transportation services between prisoners and other facilities. Paragraph 14 states that defendants employed plaintiff as an extradition officer. And then again, paragraph 16 states that plaintiff's job duties included transporting inmates between prisons and other facilities in passenger vans weighing less than 10,001 pounds. And I see I'm out of time already. Thank you. Thank you. Mr. Hesse, did you have any rebuttal? You're on mute. Just a few points, Your Honor. And this is to your issue about the extrinsic materials in the 12B context. That issue, and to the extent that USC or any of the appellees want you to consider it, that is not before the court. There were no objections. The magistrate judge recommended that the 12B6 motion be denied. And she said in her report and recommendation that she would not consider any extrinsic materials in considering the Rule 12B6 motion. There were no objections, none at all from USC or SPLI. And so they can't assign error under Rule 72A to that holding by the magistrate judge, which was adopted by the district judge. So I know they want you to look at it, but that issue is plainly not before the court under the rules. Second, and I want to briefly touch on the jurisdictional issue because perhaps I'm just being dense, but I don't quite understand it. We plainly appealed the dismissal of the lawsuit with prejudice. That is undisputable. I think there's a legitimate disagreement about the vehicle that the court used to dismiss the lawsuit. Mr. USC and his colleagues argue that it was under Rule 12B. I think it worked more like a sua sponte summary judgment, but we appealed the order dismissing the case with prejudice. This court has jurisdiction. In terms of the partial summary judgment motion that I filed, I got the sense early on that the case might wind up being dismissed and what I felt would be improperly so. And I wanted to give this court the opportunity to address the statutory interpretation. So we chose, we expressly chose to file a dispositive motion on the narrow issue that was contained therein. And this court's held over and over and over again that a party can appeal the denial of a dispositive motion after an adverse ruling on the merits of the case, even though they couldn't take an interlocutory appeal for it except under like 1292B or by some writ of mandamus or something like that. So that's why we did that. In terms of the exemption, I keep hearing over and over again that I haven't done or that the plaintiff didn't do her job in pleading the exemption. We're not required to. No plaintiff is required to plead any facts to negate an affirmative defense. And in terms of the coverage issue, we pled and maybe we're talking past each other, but traditionally when you talk about coverage under the Fair Labor Standards Act, you're talking about enterprise coverage or individual coverage. We pled facts related to both of those issues, which the court had to assume to be true for purposes of Rule 12B. I think the confusion stems from this small vehicle exception that the court talked about in Carly versus Cress pumping and quick cases like that. But that's an exception to the exemption. You don't even get to talking about it until you get past, until the defendant satisfies its burden on the exemption. So there was nothing I needed to do in terms of the exemption in my pleadings. After all, I mean, think about this, Your Honor. They could easily answer, not include the affirmative defense in their answer, and then it's waived and the case proceeds. Counsel, do your allegations in the complaint show that the MCA exemption applies? No, Your Honor. The first element of that exemption that this court has talked about in case after case, Carly versus Cress pumping, Olibas versus Barclay, is that the worker was employed by a motor carrier or private motor carrier. That exemption, that particular element can't be found anywhere in my pleadings. There is no allegation that she was employed by a motor carrier or private motor carrier registered with the Secretary of Transportation. There's an allegation. So you didn't plead yourself into the affirmative defense. Exactly, Your Honor. I did not plead myself into the affirmative defense. In fact, I pled expressly that she was not exempt from the overtime requirements of the act. Anything else? No, Your Honor. Thank you, counsel, all of you. We appreciate you being here today. This format, I hope you were able to hear and see and fully participate. This case is submitted. We'll take it under advisement. Thank you. Thank you, Your Honor.